CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JAN 13 2016
JULIA C. DUDLEY, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

D.N., by and through his next friends )
CHRISTINA NOLEN and )
ROBERT NOLEN, et al. )
)
    Plaintiffs, )
) Civil Action No. 3:15-CV-00045
v. )
) **MEMORANDUM OPINION**
LOUISA COUNTY PUBLIC SCHOOLS, )
et al., )
) By: Hon. Glen E. Conrad
    Defendants. ) Chief United States District Judge
)

Plaintiffs Christina Nolen and Robert Nolen (the "Nolens"), individually and as next friends for their minor children, D.N. and N.N., bring this action against defendants Louisa County Public Schools ("LCPS") and Louisa County School Board ("LCSB"). Plaintiffs appeal the outcome of their due process hearing under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, et seq., as well as assert claims under Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794. The case is presently before the court on defendants' motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, the motion will be granted in part and denied in part.

## Background

The following facts, taken from plaintiffs' complaint, are accepted as true for purposes of the motion to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

D.N. and N.N. are minor children who reside in Louisa, Virginia with their parents, the Nolens. D.N. has been a student within the LCPS system, which is overseen by LCSB, since

2009. During the 2013-2014 school year, D.N. and N.N. attended Moss-Nuckols Elementary School ("MNES"), which is operated by LCPS.

D.N. was diagnosed as autistic and was eligible for, and received, special education and related services as a child with autism. During the 2013-2014 school year, it was determined that D.N.'s "[l]east [r]estrictive [e]nvironment" was the general education classroom. Compl. ¶ 19. However, LCPS sent D.N. home "at least 10 times because of non-disciplinary issues caused by his [a]utism." Id. ¶ 20. In addition, during the same school year, LCPS regularly removed D.N. from the general education classroom and sent him to the principal's office for non-disciplinary issues caused by his autism. While in the principal's office, D.N. received no educational instruction, but instead "made snowflakes and played on the [p]rincipal's computer." Id. ¶ 23. Finally, during the same school year, LCPS regularly prevented D.N. from attending class in the general education classroom and kept him in the special education room for non-disciplinary issues caused by his autism. LCPS denied these allegations in subsequent individualized education program ("IEP") meetings with Ms. Nolen, where she also expressed concerns about the amount of classroom instruction that D.N. was missing.

The complaint further states that D.N.'s issues at school "followed him home." Id. ¶ 30. Specifically, D.N. would often "act out uncontrollably," causing stress and anxiety for N.N. and the Nolens. Because of D.N., the family was unable to attend church, visit friends and family, or take D.N. to any public places. These issues also caused Ms. Nolen to quit her job.

In December of 2013, D.N. was hospitalized because of his autism. In January of 2014, Ms. Nolen asked defendants to place D.N. in a private school that could handle his non-disciplinary issues caused by his autism. LCPS denied this request. In April of 2014, LCPS lost track of D.N. during the school day. Ms. Nolen again requested that LCPS place D.N. in a

2

private school. LCPS denied her second request. On May 5, 2014, D.N. exited the school building on his own, but was later caught by an LCPS staff member. That same day, LCPS called the police and sought to have D.N. involuntarily committed for a mental health examination because of non-disciplinary issues caused by his autism. D.N. was forcibly removed from the school in handcuffs by two sheriff's deputies. Because the handcuffs were too large on D.N., the deputies put D.N. in leg shackles and placed him in the backseat of the police car. D.N. started to bang his head on the car's door and cage, which prompted the deputies to remove him from the vehicle. Both N.N. and Mr. Nolen witnessed the entire incident. Deputies then transported D.N. to the hospital, where he was evaluated and released with no new diagnoses or medications.

The complaint alleges that, after witnessing the May 5, 2014 incident, N.N. "suffered from extreme anxiety [and] was afraid to ask a teacher for anything for fear that they would call the police and take him away." Id. ¶ 43. In addition, N.N's grades dropped, and he started suffering seizures before and during the school day because of his anxiety. The complaint alleges that Mr. Nolen also suffered "extreme stress and anxiety" after witnessing the May 5, 2014 incident. Id. ¶ 81.

D.N. did not return to MNES after the May 5, 2014 incident. Instead, LCPS provided D.N. with special education and services at his home for the rest of the 2013-2014 school year. LCPS also provided D.N. with compensatory education over the summer of 2014. In May of 2014, LCPS agreed to place D.N. in a private school that specialized in teaching children with autism. During the 2014-2015 school year, D.N.'s non-disciplinary issues ceased, and he was no longer excluded from the general education classroom. The complaint alleges that, because D.N. was no longer experiencing issues at school, his family was once again able to attend church, visit family and friends, and go out in public.

3

On May 4, 2015, the Nolens filed a special education due process request under Section 504, seeking monetary damages for both their and D.N.'s non-IDEA injuries. In their request, the Nolens did not seek remedies under the IDEA because LCPS had provided D.N. with compensatory education and agreed to place him in a private school for children with autism; therefore, the special education issues with LCPS had been resolved. LCPS objected to the Nolen's due process request, arguing that the Hearing Officer could not award monetary damages. On May 28, 2015, the Hearing Officer sustained LCPS's objection and dismissed the Nolen's due process request.

On August 25, 2015, plaintiffs initiated this action as both an appeal of the Hearing Officer's decision and a four-count complaint under Section 504. As to the appeal of the Hearing Officer's decision, plaintiffs argue that the Hearing Officer erred as a matter of law in dismissing the Nolen's due process request. Plaintiffs ask the court to remand their case back to the Hearing Officer, so that the Hearing Officer may "fully develop the evidentiary record," which in turn would "promote judicial efficiency." Id. ¶ 58. As to the Section 504 claims, Count I of the complaint alleges that defendants discriminated against D.N. based solely on his disability. In Count II, plaintiffs claim that defendants caused N.N. extreme anxiety when they discriminated against D.N. In Count III, plaintiffs claim that defendants caused Ms. Nolen to quit her job and suffer extreme stress and anxiety when they discriminated against D.N. In Count IV, plaintiffs claim that defendants caused Mr. Nolen extreme stress and anxiety when they discriminated against D.N. Plaintiffs seek damages in the amount of $445,000.00 as well as equitable relief.

On September 18, 2015, defendants moved to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules for Civil Procedure. The court held a hearing on the motion on December 11, 2015. The motion has been fully briefed and is ripe for disposition.

4

## Standards of Review

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a party to move for dismissal of an action for lack of subject matter jurisdiction. The plaintiff bears the burden of proving that subject matter jurisdiction exists, Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999), and must establish standing to bring the claims asserted in the complaint before the court may decide the merits of such claims, Allen v. Wright, 468 U.S. 737, 750 (1984).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of an action for failure to state a claim upon which relief can be granted. To survive such a motion, a plaintiff must establish "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). All well-pleaded allegations in the complaint are taken as true and all reasonable factual inferences are drawn in the plaintiff's favor. Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). However, "[a]t bottom, a plaintiff must 'nudge [her] claims across the line from conceivable to plausible' to resist dismissal." Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 364-65 (4th Cir. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Moreover, the complaint must contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 555, 570. Although a complaint need not contain detailed factual allegations, it must contain more than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action will not do." Id. at 555.

## Discussion

Congress has enacted two statutes to ensure that students with disabilities have access to a free public education equal to that of non-disabled students. The first is the IDEA, which

5

requires, inter alia, that states accepting federal funds provide a free appropriate public education to students with disabilities. 20 U.S.C. § 1412(a)(1). The second statute is Section 504, which prohibits recipients of federal funds, including schools, from discriminating against an individual because of a disability. 29 U.S.C. § 794(a). "Whereas the IDEA affirmatively requires participating states to assure disabled children a free appropriate public education, ... [Section 504] instead prohibits discrimination against disabled individuals." Sellers by Sellers v. Sch. Bd. of City of Manassas, Va., 141 F.3d 524, 528 (4th Cir. 1998).

I. **Standing**

In Counts II, III, and IV of the complaint, N.N. and the Nolens assert claims for their own emotional and monetary harms resulting from defendants' alleged discrimination against D.N., in violation of Section 504. In their motion to dismiss, defendants first argue that N.N. and the Nolens lack standing to bring these claims. Specifically, they argue that Section 504 does not confer standing on parents to assert individual claims for damages based on discrimination against their disabled children. The court is constrained to agree.

To have standing, a plaintiff must demonstrate: (1) that he or she has suffered an "injury in fact" that is concrete, particularized, and actual or imminent; (2) that there is a causal connection between the injury and the conduct complained of; and (3) that it is likely that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). In addition to the constitutional standing requirements, the federal judiciary has developed a prudential limitation on standing where the plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Warth v. Seldin, 422 U.S. 490, 499 (1975). However, Section 504 creates a right of action for persons or entities whose claims might otherwise be barred by these prudential

6

considerations. Specifically, Section 504 permits "any person aggrieved" by unlawful discrimination to bring an action. 29 U.S.C. § 794a(a)(2). Courts have interpreted this language to prohibit discrimination against an individual based on his or her association with a disabled person. See Popovich v. Cuyahoga Cty. Ct. of Common Pleas, 150 F. App'x 424, 427-28 (6th Cir. 2005) ("[T]he district court incorrectly concluded that the Rehabilitation Act does not have an associational discrimination component."); see also, D.A. ex rel. K.A. v. Pleasantville Sch. Dist., No. 07-4341, 2008 WL 2684239, at *6 (D.N.J. Jun. 30, 2008) ("Here, as individuals with a relationship to a person with a known disability, [plaintiffs] could have a cause of action under … the Rehabilitation Act[.]") Nevertheless, "[a]n associational discrimination claim 'requires a separate and distinct denial of a benefit or service to a non-disabled person' and 'may not be premised on a derivative benefit or harm based on treatment towards a disabled person.'" Hooker v. Dallas Indep. Sch. Dist., No. 3:09-cv-0676-G-BH, 2010 WL 4025776, at *5 (N.D. Tex. Sept. 13, 2010) (quoting United States v. Nobel Learning Cmtys., Inc., No. 09-1818, 2010 WL 1047730, at *4 (E.D. Pa. Mar. 19, 2010)).

In this case, plaintiffs' complaint, even liberally construed, does not allege that N.N. or the Nolens were disabled, or that they were denied benefits or services based on D.N.'s disability. Instead, Counts II, III, and IV of the complaint allege that N.N. and the Nolens suffered emotional and financial harms solely "when [LCPS] discriminated against D.N." Compl. ¶¶ 73, 77, 81. In particular, plaintiffs allege in Counts II and IV that N.N. and Mr. Nolen experienced extreme stress and anxiety after witnessing the deputies forcefully remove D.N. in handcuffs and leg shackles. Plaintiffs allege in Count III that Ms. Nolen experienced extreme stress and anxiety and was forced to quit her job because D.N. brought his behavioral issues home. These claims rest entirely on the discrimination plaintiffs allege that D.N. experienced,

7

and "they do not claim they themselves faced any discrimination." D.A. ex rel. K.A., 2008 WL 2684239, at *6. It appears that plaintiffs have failed to show that they have satisfied these prudential limitations and, thus, do not have standing to bring these claims.

Nevertheless, plaintiffs argue that they have standing to bring their own claims under Section 504 based on the United States Supreme Court's decision in Winkelman v. Parma City School District, 550 U.S. 516 (2007). In that case, the Court held that parents have "independent, enforceable rights concerning the education of their children" under the IDEA. Winkelman, 550 U.S. at 529. In so holding, the Court relied on the text of the IDEA, which provides that its purpose is to "ensure that the rights of children with disabilities and parents of such children are protected." Id. at 523 (citing 20 U.S.C. § 1400(d)(1)(B)). In addition, the Court found that the expressed terms of the IDEA "contemplates parents will be the parties bringing the administrative complaints" and "it would be inconsistent with the statutory scheme to bar them from continuing to assert these [enforceable] rights in federal court." Id. at 526. Since Winkelman, courts have disagreed as to whether its holding applies beyond the IDEA to include Section 504 claims. Some courts extended the holding in Winkelman without much explanation. See D.A. ex. rel. K.A., 2008 WL 2684239, at *6 (listing cases). Other courts, including this court, have limited the holding of Winkelman to claims brought solely under the IDEA because the Supreme Court's decision was grounded in the specific statutory language and purpose of the IDEA. See Augustine v. Winchester Pub. Sch. Dist., No. 5:13cv00025, 2013 WL 5347465, at *6 n.6 (W.D. Va. Sept. 17, 2013) (listing cases).

The court is more persuaded by the authorities that have limited the scope of Winkelman to the IDEA. First, "the Supreme Court made no reference in its decision to any other civil rights statute other than the IDEA." Augustine, 2013 WL 5347465, at *6. Other courts have similarly

8

found that Winkelman "does not translate into a broad right to pursue any statutory or common law claims on a child's behalf by a parent[.]" L.F. v. Houston Indep. Sch. Dist., No. H-08-2415, 2009 WL 3073926, at *22 (S.D. Tex. Sept. 21, 2009); see also Woodruff v. Hamilton-Township Pub. Sch., 305 F. App'x 833, 836 (3d Cir. 2009). Second, the Supreme Court explicitly stated that "the text of IDEA resolves the question presented[,]" and that "a proper interpretation of the [IDEA] requires a consideration of the entire statutory scheme" Winkelman, 550 U.S. at 523. While the court appreciates that both the IDEA and Section 504 contain the same "any party aggrieved" language, the Supreme Court's decision in Winkelman "relied on the unique structure and content of the IDEA, especially concerning the coterminous rights of parents and their children and their remedies." Augustine, 2013 WL 5347465, at *6; see also Hooker, 2010 WL 4025776, at *6 ("[T]he Winkleman court reasoned that the text and structure of the IDEA does not differentiate between the rights accorded to children and those accorded to parents, and it provides for 'expansive review and extensive parental involvement' at all levels including the federal courts."). Unlike the IDEA, Section 504 does not contain a statutory scheme that contemplates conterminous rights held by parents and their children. In the court's view, these distinctions are significant when deciding whether to extend the holding in Winkelman. Moreover, the court finds that the decision in Winkelman was so closely tied to the text and structure of the IDEA that it would be improper to extend its holding to Section 504 claims. Therefore, the court concludes that the Nolens do not have standing to pursue claims under Section 504 based solely on the alleged discrimination suffered by D.N. Even if the court could find that the Nolens had standing to bring these Section 504 claims on their own behalf, the court is not aware of any authority that N.N., as D.N.'s older brother, would also have standing based on the facts alleged in the complaint. Accordingly, Counts II, III, and IV will be dismissed for

9

lack of subject-matter jurisdiction.[1]

## II. Failure to State a Claim

In their motion, defendants also argue that plaintiffs have failed to state claims upon which relief may be granted in both the appeal of the Hearing Official's decision as well as Count I of the complaint. The court will address each argument in turn.

### a. Appeal of the Hearing Officer's Decision

In addition to the four-count complaint, plaintiffs also appeal the Hearing Officer's decision that D.N.'s due process request was insufficient due to the nature of the proposed remedy, specifically monetary damages. The IDEA is a comprehensive statute that "provides a panoply of procedural rights to parents to ensure their involvement in decisions about their disabled child's education." Sellers, 141 F.3d at 527. Concerns and complaints about the disabled child's education must be heard "by the State educational agency or by the local education agency, as determined by State law." 20 U.S.C. § 1415(f) (1)(A); see also M.M. ex rel. D.M. v. Sch. Dist. of Greenville Cnty., 303 F.3d 523, 535 (4th Cir. 2002) ("It is clear that, under the IDEA, parents asserting a violation of the IDEA must first request a due process hearing."). However, "the principal form of relief under the IDEA is prospective benefits, in the form of educational accommodations." Reid v. Prince George's Cnty. Bd. of Educ., 60 F. Supp. 3d 601, 606 (D. Md. 2014). As such, the "IDEA does not provide for compensatory or punitive damages." Sellers, 141 F.3d at 525. The IDEA also expressly requires exhaustion of claims under "other Federal laws protecting the rights of children with disabilities ... seeking relief that

---

[1] At the December 11, 2015 hearing, plaintiffs' counsel provided additional facts that may support a finding that the Nolens and N.N. suffered discrimination based on their association with D.N., separate from the discrimination that D.N. personally experienced. However, the complaint does not contain these allegations, and the court is constrained, by the facts provided in the complaint, to find that the Nolens and N.N. do not have standing to pursue their claims. Nevertheless, the court will dismiss Counts II, III, and IV without prejudice to allow plaintiffs the opportunity to seek leave to file an amended complaint.

10

is also available under [the IDEA]." 20 U.S.C. § 1415(l). However, exhaustion of claims is not necessary if "the administrative process would be futile." M.M. ex rel. D.M., 303 F.3d at 536.

In this case, defendants contend that remanding the case and requiring the Hearing Officer to conduct a due process hearing would be futile. Defendants assert that plaintiffs are attempting to frame their IDEA claims, for which monetary damages are not available, as Section 504 claims, for which monetary damages are available. They further argue that the Hearing Officer does not have the authority to award money damages, the sole remedy that the Nolens seek. In addition, defendants contend that plaintiffs are not required to exhaust their administrative remedies because such exhaustion would be futile as plaintiffs have already received compensatory education and services as required under the IDEA.

Based on the injury alleged by plaintiffs and the type of remedy sought to redress it—personal injuries and monetary damages, respectively—the court concludes that exhaustion of plaintiffs' Section 504 claims would be futile as monetary damages are not available under the IDEA and, thus, the Hearing Officer would not have authority to award such relief.[2] Plaintiffs admit that they have already received educational accommodations as required by the IDEA and seek only monetary damages at this stage. See Compl. ¶¶ 50-51. The Fourth Circuit has explicitly stated that the IDEA does not provide for this form of relief. Sellers, 141 F.3d at 525. The court recognizes that "[t]he inclusion of a claim for monetary damages may not, in and of itself, render exhaustion futile." Reid, 60 F. Supp. 3d at 607. However, "other courts have found that exhaustion of IDEA administrative remedies was futile in cases alleging injuries to a

---

[2] It appears that plaintiffs do not dispute that the Hearing Officer does not have authority to award monetary damages. Moreover, due process hearing officers in other cases have similarly found that they did not have authority to award monetary damages. See, e.g., A.C. ex rel. M.C. v. Indep. Sch. Dist. No. 152, No. 06-3099, 2006 WL 3227768, at *2 (D. Minn. Nov. 7, 2006); N.T. ex rel. Trujillo v. Espanola Public Schs., No. Civ 04-0415, 2005 WL 6168483, at *10 (D.N.M. Jun. 21, 2005); Doe v. Town of Bourne, No. Civ. A. 02-11363-DPW, 2004 WL 1212075, at *2 (D. Mass. May 28, 2004). As such, the court is persuaded that the Hearing Officer did not have authority to award monetary damages to plaintiffs.

11

disabled student ... where the plaintiff sought only monetary damages as compensation for injuries, not further educational assistance from the school district." Id. (discussing cases in the Seventh, Ninth, and Tenth Circuits). Although plaintiffs' claims are related to compliance with the IDEA in that D.N.'s inclusion in the general education classroom was presumably part of his IEP, the monetary damages that plaintiffs seek are meant to compensate for the emotional harm that D.N. allegedly suffered as a result of defendants' discrimination. See Compl. ¶ 69. Because monetary damages are not available under the IDEA, and plaintiffs concede that they are not seeking any additional education accommodations, exhaustion of plaintiff's Section 504 claims would be futile and, therefore, is not required in this case. Accordingly, the court declines to remand the case to the Hearing Officer for a decision on the merits of Count I in the complaint.

### b. Disability Discrimination against D.N.

Having concluded that the Nolens and N.N. lack standing to pursue their own claims based on defendants' alleged discrimination against D.N., the sole claim that remains in this case is D.N.'s allegation of disability discrimination in violation of Section 504. Plaintiffs argue that D.N. was discriminated against when he was excluded from participating in the general education classroom, involuntarily transported for a mental health evaluation in a non-emergency situation, and sent home early from school on multiple occasions. As a result, plaintiffs contend that D.N. suffered damages in the form of loss of instruction time, social stigmatization, humiliation, fear, depression, and negative self-esteem.

In order to state a claim under Section 504, a plaintiff must show that he or she was discriminated against solely on the basis of a disability. Sellers, 141 F.3d at 528. "To prove discrimination in the education context, something more than a mere failure to provide the free appropriate education required by [IDEA] must be shown." Id. at 529 (internal quotation marks

omitted). Instead, the Fourth Circuit has held that either "bad faith" or "gross misjudgment" must be shown in order to establish a claim under Section 504. Id.; see also K.D. ex rel. J.D. v. Starr, 55 F. Supp. 3d 782, 792 (D. Md. 2014) ("In the Fourth Circuit, ... plaintiffs must show bad faith or gross misjudgment by the school system to establish Section 504 discrimination in the education context."). This standard is difficult to meet because of the "great deference to which local school officials' educational judgments are entitled." Doe v. Arlington Cty. Sch. Bd., 41 F. Supp. 2d 559, 609 (E.D. Va. 1999). As such, mere claims of negligence are insufficient to make out a Section 504 claim, Sellers, 141 F.3d at 529, as are disagreements with school officials' evaluations, Monahan v. State of Neb., 687 F.2d 1164, 1170 (8th Cir. 1982). In addition, a school's failure to "timely assess and diagnose" a child's disability is also not bad faith or gross misjudgment. Id. Ultimately, plaintiffs must allege that the school's actions "depart[ed] substantially from 'accepted professional judgment, practice or standards as to demonstrate that the persons responsible did not base the decision on such a judgment.'" M.Y. ex rel. J.Y. & D.Y. v. Special Sch. Dist. No. 1, 544 F.3d 885, 890 (8th Cir. 2008).

In their motion, defendants argue that plaintiffs have failed to state a claim upon which relief may be granted as to Count I because they failed to allege sufficient facts to show that defendants engaged in bad faith or gross misjudgment. Specifically, defendants argue that plaintiffs have only shown, at best, negligence and/or a mere failure to timely assess and diagnose D.N.'s disability.

Based on the factual allegations in the complaint and drawing all reasonable, factual inferences in the plaintiff's favor, the court finds that plaintiffs have plausibly shown that defendants discriminated against D.N. on the basis of his disability. The complaint alleges that D.N. was sent home from school at least ten times due to non-disciplinary issues related to his

13

autism. In addition, the complaint also provides that defendants removed D.N. from the general education classroom on multiple occasions and sent him to either the principal's office or a special education classroom, where he received little to no instruction. This occurred despite the determination that D.N.'s least restrictive environment was the general education classroom. Moreover, the complaint alleges that defendants denied that these incidents occurred in their IEP meetings with the Nolens. The defendants also relied on such denials when they refused to place D.N. in a private school that was better equipped to handle his disability. Finally, the complaint states that D.N. was discriminated against when defendants had him involuntarily committed for mental evaluation.

Other courts have found that similar actions amounted to bad faith or gross misjudgment. See, e.g., M.P. ex rel. K. v. Indep. Sch. Dist. No. 721, 326 F.3d 975, 982 (8th Cir. 2003) (finding bad faith or gross misjudgment when the student's mother called the school on a weekly basis, and the school failed to return her phone calls, proposed drastic alterations to the student's school day, and rescinded an offer to pay for the student to be transported to another school district); K.D. ex rel J.D., 55 F. Supp. 2d at 792 (finding bad faith or gross misjudgment when "teachers consistently failed to honor the agreed-upon accommodations"); N.T. v. Baltimore City Bd. of Sch. Com'rs, No. JKB-11-356, 2011 WL 3747751, at *6-8 (D. Md. Aug. 23, 2011) (denying a 12(b)(6) motion when the complaint contained allegations that the student was suspended multiple times based on "questionable, if not nonexistent, evidence of wrongdoing" and "[w]ithout evidence that these important decisions were based upon reason, one could infer that [the student] has been denied educational benefits solely based on his disability"). Moreover, the court finds that these allegations of discrimination against D.N., taken together, go beyond merely showing that defendants assessed and diagnosed D.N.'s disability in an untimely manner,

that the Nolens simply disagreed with defendants' assessments, or that defendants committed negligence. Instead, plaintiffs have plausibly alleged that defendants engaged in conduct that departed substantially from accepted professional judgment, practice, or standards. The fact that D.N.'s behavior issues improved when he was placed in a private school provides further support for this conclusion. See K.D. ex rel. J.D., 55 F. Supp. 3d at 792 (finding a sufficient claim under Section 504 and noting that the student's "educational progress reportedly improved when moved to a private school, where her accommodations were provided in a more systematic and rigorous way"). Finally, the court finds unpersuasive defendants' contention that there were no previous allegations of violent or threatening behavior before the May 5, 2014 incident. Evidence of personal animosity or ill will is not necessary for a finding of bad faith or gross misjudgment. Id. at 791. The court concludes that the factual allegations in the complaint state a plausible claim that defendants acted in bad faith or with gross misjudgment when addressing D.N.'s needs, and that plaintiffs have plausibly shown that D.N. was discriminated against solely on the basis of his disability. Accordingly, defendants' motion to dismiss as to Count I will be denied.

### c. Louisa County Public Schools as a Defendant

Plaintiffs have named LCPS as a defendant in this case. In their motion to dismiss, defendants argue that LCPS is a non-entity and should be dismissed from this case. In Virginia, governance of each school division is vested in the division's school board. Va. Code Ann. § 22.1-28. Virginia law also provides that "every such school board is declared a body corporate" and may sue or be sued. Id. § 22.1-71. Other courts in this Circuit, including this court, have held that public schools divisions are not entities that may be sued. E.g., Augustine, 2013 WL 5347465, at *5; Smith v. James C. Hormel Sch. of Va. Inst. of Autism, No. 3:08cv00030, 2009

15

WL 1081079, at *4 (W.D. Va. Apr. 22, 2009); M.S. v. Fairfax Cty. Sch. Bd., No. 1:05CV1476(JCC), 2006 WL 721372, at *3 (E.D. Va. Mar. 20, 2006); Thayer v. Wash. Cty. Sch. Bd., 949 F. Supp. 445, 446 n.1 (W.D. Va. 1996). Moreover, plaintiffs do not contend that LCPS is a corporate body that has the power to sue or be sued. Therefore, the court concludes that plaintiffs cannot maintain a civil action against LCPS. Accordingly, LCPS will be dismissed as a defendant from this case.

## Conclusion

For the foregoing reasons, defendants' motion to dismiss will be granted in part and denied in part. The motion will be denied with respect to Count I of the complaint and granted with respect to Counts II, III, and IV of the complaint. Counts II, III, and IV will be dismissed without prejudice so that plaintiffs may seek leave to file an amended complaint. LCPS will also be dismissed as a defendant, and the case shall proceed solely against LCSB.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 13th day of January, 2016.

_____
Chief United States District Judge